UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CINDY COSTELLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:19-cv-2956-JMS-MJD |
| | ) | |
| BOARD OF TRUSTEES OF THE FLAVIUS J. | ) | |
| WITHAM MEMORIAL HOSPITAL, | ) | |
| d/b/a WITHAM HEALTH SERVICES, | ) | |
| MICHAEL WAGNER, | ) | |
| BRENDA STROHL, | ) | |
| GEORGE POGAS, and | ) | |
| EMILY ROGERS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Cindy Costello filed a Complaint against her employer, Board of Trustees of the

Flavius J. Witham Memorial Hospital d/b/a Witham Health Services ("Witham") and several of

its employees, alleging that she was denied employment benefits that were owed to her,

including overtime compensation, bonuses, paid time off, and reimbursement of expenses.

[Filing No. 1.]  Defendants filed a Motion for Partial Judgment on the Pleadings, pursuant to

Federal Rule of Civil Procedure 12(c), seeking judgment on some of Ms. Costello's state law

claims, which was fully briefed by the parties.  [Filing No. 14; Filing No. 15; Filing No. 20;

Filing No. 24.]  Ms. Costello then filed a Motion for Leave to File an Amended Complaint,

seeking to add additional claims without changing the claims raised in her initial Complaint.

[Filing No. 36.]  Pursuant to the Court's order, [Filing No. 38], Defendants filed a Notice,

declining to oppose the Motion to Amend and indicating their desire to stand on the arguments

made in their Motion for Partial Judgment on the Pleadings and apply those arguments to the Amended Complaint, if amendment was permitted, [Filing No. 39].

The Court now **GRANTS** Ms. Costello's Motion for Leave to Amend, [Filing No. 36], and **DIRECTS** the Clerk to docket the proposed Amended Complaint, [Filing No. 36-1], as the operative complaint in this action, with the proposed exhibits, [Filing No. 36-2; Filing No. 36-3], docketed as exhibits thereto. The remainder of this Order will address Defendant's Motion for Partial Judgment on the Pleadings is it relates to the Amended Complaint. For the reasons stated herein, the Court grants the motion in part and denies the motion in part.

# I.
## STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain allegations that collectively "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In deciding a Rule 12(c) motion, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the non-movant. *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017).

However, to allege fraud, the plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means that the plaintiff ordinarily must describe

the "who, what, when, where, and how" of the fraud. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (internal quotations and citation omitted). Although what constitutes "particularity" may depend on the facts of each case, plaintiffs must "use some means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* (internal quotations, alteration, and citation omitted). This heightened standard does not only apply to causes of action for fraud specifically, but applies to any claim that "sounds in fraud," meaning any claim that is premised upon a course of fraudulent conduct. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Whether a claim "sounds in fraud" will depend upon the plaintiff's specific factual allegations. *Id.*

## II.
### BACKGROUND

Consistent with the standard of review described above, the following allegations from the Amended Complaint are accepted as true for purposes of deciding this Motion.

In 2014, Witham offered Ms. Costello a position in sales and marketing in its Toxicology Laboratory, to begin in January 2015. [Filing No. 36-1 at 2.] Prior to receiving this offer, Ms. Costello had worked in forensic and clinical laboratory services for 35 years and had developed a strong professional reputation within the industry and a large book of clients. [Filing No. 36-1 at 2.] Ms. Costello moved over 100 miles in order to take the position at Witham, which forced her husband to retire from his employment. [Filing No. 36-1 at 2.]

The job description provided by Witham indicated that the job was "Non-Exempt," meaning that she would be entitled to overtime pay. [Filing No. 36-1 at 2.] Pursuant to the offer, Witham was to pay Ms. Costello a base salary, plus an additional bonus in the amount of 5% of annual revenues above $1,380,000. [Filing No. 36-1 at 2.] However, Ms. Costello alleges

that Witham misrepresented its annual revenue and failed to incorporate into its representation various clients and accounts that it had lost. [Filing No. 36-1 at 3.]

During negotiations, Witham represented that it would reimburse meal costs incurred during required travel and provide Ms. Costello with three weeks of paid time off per year. [Filing No. 36-1 at 3.] After Ms. Costello began working, Witham failed to reimburse her meal costs, required her to work during her paid time off, forced her to use her paid time off for any day on which she was unable to travel, only paid her for 40 hours per week even though she worked more hours, and refused to pay her overtime. [Filing No. 36-1 at 3.] In addition, Ms. Costello personally established a $100,000 line of credit with a distributor, and several credit accounts with partnering laboratories, which Witham knowingly and intentionally defaulted on. [Filing No. 36-1 at 4.]

Ms. Costello brought the lack of overtime pay to the attention of Jeff Retz, the toxicology lab manager, and informed all of the individual Defendants. [Filing No. 36-1 at 3.] Mr. Retz threatened Ms. Costello that if she did not stop pursuing overtime pay or commission that was owed to her, she would either be fired, or the toxicology lab would be shut down. [Filing No. 36-1 at 3.] Defendant Dr. Michael Wagner also told Ms. Costello that, if she pursued her requests for overtime pay or unpaid commission, she would be "axed." [Filing No. 36-1 at 3.] Ms. Costello complained to human resources about the threats, but nothing was done. [Filing No. 36-1 at 4.]

Based on these allegations, Ms. Costello asserted various claims under the federal Fair Labor Standards Act ("FLSA"), the Indiana Wage Payment Statute, the federal Family and Medical Leave Act ("FMLA"), Title VII, the federal Equal Pay Act, and Indiana common law. [Filing No. 36-1 at 4-14.] Relevant here, Ms. Costello asserted state law claims for breach of

contract, unjust enrichment, promissory estoppel, constructive fraud, and breach of fiduciary duty. [Filing No. 36-1 at 5-10.]

As to the breach of contract claim, Ms. Costello asserts that she entered into negotiations with Witham based upon a job description for a non-exempt position. [Filing No. 36-1 at 6.] She then entered into a contract with Witham, under which Witham agreed to pay her a 5% bonus every six months, no later than January 15th and July 15th of each consecutive year. [Filing No. 36-1 at 6.] Witham also agreed to reimburse her for the cost of meals during any necessary travel and for office expenses. [Filing No. 36-1 at 6.] According to Ms. Costello, Witham breached the contract by "failing to provide [her] with the agreed upon terms of employment," and by failing to pay her bonuses and reimburse her for meals and office expenses, resulting in substantial monetary damage. [Filing No. 36-1 at 6.]

Ms. Costello attached to her Amended Complaint a copy of the job posting for the Sales and Marketing Representative position at Witham, which contains a notation that the job is "Nonexempt." [Filing No. 36-2 at 2.] The posting also states that it "is not a contract of employment, nor does it establish an employment relationship that requires the hospital or employee to have a reason to terminate the employment relationship." [Filing No. 36-2 at 3.] In addition, the posting states that Witham "may unilaterally modify the content of this document at any time," with or without notice to or approval from the employee, and that if the employee "continues to remain employed after notification of any changes, it shall be considered an acceptance of the same." [Filing No. 36-2 at 3.] The posting was unsigned. [Filing No. 36-2 at 2-3.]

Ms. Costello also attached a series of emails which culminated in the following terms of the offer of employment: (1) a yearly salary of $55,000 plus a 5% bonus for revenues in excess

of $1,380,000, to be paid semi-annually; (2) reimbursement for mileage at the rate established by the Internal Revenue Service; (3) reimbursement for office supplies and meals at a rate of one meal per day unless overnight travel is required; and (4) furnishing of a laptop and cell phone. [Filing No. 36-3 at 2.]

Regarding unjust enrichment, Ms. Costello asserts that Witham is a large, wealthy business organization that was in a superior position in terms of knowledge and business sophistication and it owed her a fiduciary duty to be honest and tell her the truth. [Filing No. 36-1 at 7.] She states that Witham took advantage of this superior position and "implemented a scheme to defraud" her by lying about and failing to inform her of material facts. [Filing No. 36-1 at 7.] Specifically, she alleges that she was under a contract to receive a bonus based on revenue, but Witham refused to inform her of its actual revenue and intentionally lied to her about the amount of revenue generated to avoid paying the bonus. [Filing No. 36-1 at 8.] Ms. Costello also alleges that Witham allotted her three weeks of paid time off, but then required her to maintain availability and answer phone calls and emails while she used the time. [Filing No. 36-1 at 8.]

As to the claim for promissory estoppel, Ms. Costello alleges that Witham made "numerous promises" in order to induce her to accept its offer of employment, including but not limited to the promise that it would accept the clients she presented. [Filing No. 36-1 at 8.] Despite this promise, Witham repeatedly refused to provide services to numerous large clients that Ms. Costello presented. [Filing No. 36-1 at 8.] Ms. Costello also alleges that she personally established a $100,000 line of credit with a distributor and two credit accounts with partnering laboratories, "under the implied assurance that [Witham] would make timely payments" on the accounts, and that Witham used her name and reputation to negotiate the terms of the line of

credit in order to obtain products vital for its daily operations. [Filing No. 36-1 at 9.] She alleges that Witham then knowingly and intentionally defaulted on these accounts, which caused the distributor and laboratories to contact Ms. Costello personally for payment, irreparably harming her professional reputation. [Filing No. 36-1 at 9.]

Regarding her claim for breach of fiduciary duty, Ms. Costello alleges that Defendants owed fiduciary duties to her, and Defendants have breached those duties, resulting in substantial damages. [Filing No. 36-1 at 10.]

Defendants have filed a Rule 12(c) Motion for Partial Judgment on the Pleadings as to Ms. Costello's claims for breach of contract, unjust enrichment, promissory estoppel, constructive fraud, and breach of fiduciary duty. [Filing No. 14.] The Court now considers the Motion and the related briefing by both parties as it relates to the Amended Complaint.

### III.
#### DISCUSSION

At the outset, the Court notes that Ms. Costello, in her Response to Defendants' Motion, conceded that her claim for constructive fraud did not satisfy the particularity requirements of Rule 9(b) and voluntarily withdrew it. [Filing No. 20 at 5-6.] Although Ms. Costello later reasserted her constructive fraud claim in her Amended Complaint, [Filing No. 36-1 at 9], this appears to have been an oversight, as the allegations were not altered to account for her concession that the claim was insufficiently pled. Accordingly, the Court will treat the constructive fraud claim as **WITHDRAWN**, and Defendants' Motion is **DENIED AS MOOT** with respect to that claim. The Court will address the remaining claims in turn.

#### A. Breach of Contract

Defendants argue that, because the documentary evidence attached to the Amended Complaint does not indicate any fixed duration of her employment or guarantee dismissal only

for cause, Ms. Costello was an at-will employee as a matter of law. [Filing No. 15 at 3-4.] Accordingly, they argue, the terms of the employment contract were subject to modification or termination at any time, Ms. Costello accepted such modifications by continuing her employment, and she cannot bring a claim for breach of contract. [Filing No. 15 at 4-6.]

Ms. Costello responds that an employment contract that does not contain a specified period of employment is nonetheless an enforceable contract. [Filing No. 20 at 6.] She further argues that she demonstrated the existence of an employment contract and adequately stated a claim for Defendants' breach thereof. [Filing No. 20 at 7.]

In reply, Defendants assert that they do not argue that Ms. Costello does not have an employment contract with Witham, but instead argue that her contract is one for at-will employment, which can be unilaterally modified at any time. [Filing No. 24 at 2-3.] Furthermore, because Ms. Costello accepted unilateral changes to her employment by continuing to work for Witham, she cannot assert a claim for breach of contract. [Filing No. 24 at 3.]

Under Indiana law, there are two basic forms of employment: employment for a definite or ascertainable term, and employment at-will. *Orr v. Westminster Vill. N., Inc*., 689 N.E.2d 712, 717 (Ind. 1997). If the employment contract does not contain a definite or ascertainable term of employment, then the employment is at-will, and presumptively terminable at any time, with or without cause, by either party. *Id.* (citations omitted).

The employment-at-will doctrine is a rule of contract construction, not a rule imposing substantive limits on the parties' freedom to contract. *Id.* (citation omitted). Furthermore, while an at-will employee may not sue in contract for wrongful termination, an at-will employment relationship is still considered contractual in nature, and an employee's at-will status does not prevent the creation of additional contractual rights. *Whinery v. Roberson*, 819 N.E.2d 465, 472

(Ind. Ct. App. 2004); *see also Mart v. Forest River, Inc*., 854 F. Supp. 2d 577, 594 (N.D. Ind. 2012) (analyzing Indiana law and concluding that "the terms of an at-will employment relationship are enforceable as long as the at-will employment relationship continues").

An employer may unilaterally change the terms of at-will employment, and the employee may either (1) accept the changes and continue employment under the new terms or (2) reject the changes and quit her employment. *Wheeler v. Balemaster, Div. of E. Chicago Mach. Tool Corp*., 601 N.E.2d 447, 448 (Ind. Ct. App. 1992). Continuation of work, even over objection to the revised terms, constitutes acceptance of those terms. *See id.* ("Although Employee objected to the revised incentive plan, he continued to work for Employer for over six months before voluntarily resigning; therefore, he must abide by the revised plan.").

Here, because neither Ms. Costello's allegations nor the attached documents show that her employment at Witham was for a specified duration, the Court concludes that her employment was at-will under Indiana law. *See Orr*, 689 N.E.2d at 717. However, this does not mean that she did not have a contractual relationship with Witham and does not prevent her from asserting a claim for breach of contract. *See Whinery*, 819 N.E.2d at 472; *Mart*, 854 F. Supp. 2d at 594.[1] Defendants are correct that it is possible that Ms. Costello's continued employment may have constituted her acceptance of Witham's modification of the original terms of the employment contract. *See Wheeler*, 601 N.E.2d at 448. However, the Court cannot discern at this stage in the proceeding if or when any such modification occurred. It is entirely possible that Defendants breached the employment contract, even if they later modified the terms of the contract to eliminate certain benefits, and Ms. Costello's apparent at-will employment status

---

[1] The Court also notes that the language on the job description stating that it was "not a contract of employment" is not dispositive, given that Ms. Costello has alleged an agreement concerning matters not addressed in that document and provided email correspondence evidencing such agreement.

would not preclude her from seeking redress. Accordingly, Ms. Costello has stated a claim for breach of contract, and Defendants' Motion is **DENIED** as to that claim.

### B. Promissory Estoppel

Defendants argue that a claim for promissory estoppel cannot be asserted where a valid contract exists. [Filing No. 15 at 6.] They also argue that, because Ms. Costello was an at-will employee, any claim for promissory estoppel would be limited to damages resulting from her detrimental reliance on Witham's promises, not including the reliance necessary to accept the offer of employment. [Filing No. 15 at 6-7.] In addition, they argue that any promises that Witham employees made to Ms. Costello merely induced her to do things that were already a part of her job responsibilities, and, therefore, she cannot show that she was induced to do anything she otherwise would not have done. [Filing No. 15 at 7.] Finally, Defendants assert that Ms. Costello failed to plead her promissory estoppel claim with the requisite degree of particularity required by Rule 9(b). [Filing No. 15 at 9-10.]

Ms. Costello responds that she is permitted to plead promissory estoppel and breach of contract in the alternative. [Filing No. 20 at 8.] She also argues that she stated a claim for promissory estoppel based on her allegations that she personally established a $100,000 line of credit and other credit accounts based on the implied assurance that Witham would make timely payments on the accounts, resulting in damage to her professional reputation when Witham defaulted. [Filing No. 20 at 8-9.] She asserts that setting up such accounts was not a part of her general duties and not something she would have done but for the promises and assurances made by Defendants. [Filing No. 20 at 9.]

In reply, Defendants assert that Ms. Costello's contention that she would not have opened the line of credit but for Defendants' promises is a factual assertion not included in her

Complaint, and, therefore, cannot be relied upon in deciding this Motion. [Filing No. 24 at 5.] They also argue that Ms. Costello waived her opposition to the following arguments by failing to address them in her response: (1) that her claim related to promises made in order to induce her to accept the offer of at-will employment is not actionable; and (2) that her promissory estoppel claim is subject to the requirements of Rule 9(b). [Filing No. 24 at 5-6.] Finally, Defendants maintain that Ms. Costello did not satisfy Rule 9(b) because she did not identify any affirmative or express promise that Witham made to induce her reliance. [Filing No. 24 at 6.]

Under Indiana law, the doctrine of promissory estoppel provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise." *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 121 (Ind. 1994) (citing *Restatement (Second) of Contracts* § 90(1) (1981)). The doctrine permits recovery where no contract in fact exists. *Hinkel v. Sataria Distrib. & Packaging, Inc.*, 920 N.E.2d 766, 771 (Ind. Ct. App. 2010). The elements of promissory estoppel are (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *Id.*

"The doctrine of promissory estoppel may be available to an at-will employee, but the remedy is limited to damages actually resulting from the detrimental reliance . . . ." *Jarboe*, 644 N.E.2d at 122. For example, an employee may be able to recover under a theory of promissory estoppel where she quit her former employment in reliance upon a promise of employment with a new employer. *Id.* at 121. However, in the case of a promise of at-will employment, the

employee may recover only out-of-pocket expenses incurred in relying on the promise, such as relocation expenses, but not for lost wages or other expectancy damages. *Id.* at 122.

As a preliminary matter, Ms. Costello is permitted to plead breach of contract and promissory estoppel claims in the alternative, and Defendants' argument that the existence of a valid contract precludes the promissory estoppel claim is rejected at this stage in the litigation. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("Under th[e] doctrine [of pleading in the alternative], a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative."). In any event, to the extent that there was a contract between the parties, it is unclear at this stage whether the alleged promises that form the basis of this promissory estoppel claim were part of that contract. Ms. Costello's breach of contract claim concerns the failure to pay her a bonus and reimburse her expenses, whereas her promissory estoppel claim is based on the failure to accept clients and make timely payments on credit accounts. [Filing No. 36-1 at 6; Filing No. 36-1 at 8-9.] The causes of action are only alternative to the extent that each seeks to redress the same wrong; there is no reason that a breach of contract claim cannot coexist in the same lawsuit in which a plaintiff claims that the defendant made a separate promise and seeks to recover for that unfulfilled promise based on a theory of promissory estoppel.

Furthermore, the Court concludes that Ms. Costello was not required to plead her claim for promissory estoppel with particularity under Rule 9(b) because it does not "sound in fraud." *See Borsellino*, 477 F.3d at 507. Specifically, the claim does not involve any allegations of fraud, deceit, or other similar conduct; Ms. Costello merely alleges that Witham failed to fulfill its promises to accept her proposed clients and make timely payments on credit accounts. Fraud is not a necessary prerequisite to promissory estoppel and does not appear to be involved in the

allegations at issue in this particular case. *See Weinig v. Weinig*, 674 N.E.2d 991, 996 (Ind. Ct. App. 1996) ("Promissory estoppel is not a species of fraud, and fraud need not be shown to establish a recoverable claim under a promissory estoppel theory, as fraud, either actual or constructive, involves elements of misrepresentation of a past or existing fact, which is irrelevant to the application of promissory estoppel.").[2]

Ms. Costello identifies two specific promises that Witham allegedly made: (1) its promise that it "would accept all of the clients that [she] could provide;" and (2) its "implied assurances" that it would make timely payments on the accounts Ms. Costello established. [Filing No. 36-1 at 8-9.] She further alleges that Witham's refusal to provide services to clients she presented and its intentional default on the accounts she established resulted in damage to her professional reputation. [Filing No. 36-1 at 8-9.] These allegations are sufficient to state a plausible claim for promissory estoppel under Indiana law. Although Defendants take issue with Ms. Costello's argument that she would not otherwise have presented new clients or established credit accounts had she not believed that Witham would service the clients and pay on the accounts, this is implicit in her allegation that she relied upon Witham's representations to her detriment, not a new factual allegation asserted for the first time in her Response to the Motion.

The Court also rejects Defendants' assertion that an "implied assurance" cannot constitute a promise. *See Farm Bureau Ins. Co. v. Allstate Ins. Co.*, 770 N.E.2d 859, 860 (Ind. Ct. App. 2002) (clarifying on rehearing that an implied promise was a proper basis for a promissory estoppel claim). Defendants assert that an allegation of an "implied assurance" does

_____

[2] Defendants' citations to Indiana caselaw requiring that promissory estoppel claims be pled with particularity are inapposite, as the federal pleading standards apply to state law claims asserted in federal court. *E.g., Christensen v. Cty. of Boone, IL*, 483 F.3d 454, 459 (7th Cir. 2007) (stating that the "notice pleading standard applies to pendent state law claims that are pleaded in federal court").

not indicate that Witham "took any affirmative action on which [Ms. Costello] could have reasonably relied," and, therefore, she failed to demonstrate the "promise" element of her promissory estoppel claim. [Filing No. 24 at 6.] Indeed, the opposite is true. Ms. Costello's allegation that she relied upon Witham's implied assurance indicates that some Witham employee took some action that suggested to Ms. Costello that any accounts or lines of credit that she established would be timely paid. While a more artfully drafted complaint would state what these actions were, the Court will not dismiss the promissory estoppel claim on that basis at this stage. Ms. Costello's allegations are sufficient to state a plausible claim for promissory estoppel, and Defendants' Motion is **DENIED** as to that claim.

### C. Unjust Enrichment

Defendants argue that a claim for unjust enrichment is precluded by the existence of a valid employment contract. [Filing No. 15 at 7.] They also argue that such a cause of action is unavailable in the context of at-will employment, because an at-will contract can be modified unilaterally by the employer at any time. [Filing No. 15 at 8.] Finally, they assert that Ms. Costello's unjust enrichment claim fails to comply with the pleading requirements of Rule 9(b). [Filing No. 15 at 9-10.]

Ms. Costello responds that she has alleged an unjust enrichment claim in the alternative to her breach of contract claim. [Filing No. 20 at 10.] She argues that her allegations that Defendants refused to compensate her for certain meal expenses and office supplies and required her to work during her time off are sufficient to state a claim for unjust enrichment, because she conferred a benefit upon Defendants with an expectation that she would be paid and the Defendants failed to pay her. [Filing No. 20 at 10-11.]

In reply, Defendants assert that Ms. Costello has ignored their arguments that: (1) a claim for unjust enrichment is not cognizable in the context of at-will employment; and (2) unjust enrichment claims premised on a course of fraudulent conduct must be pled with particularity. [Filing No. 24 at 6-7.] They assert that, because Ms. Costello has failed to address these arguments, she has waived her opposition to them. [Filing No. 24 at 7.]

"Also referred to as quantum meruit or quasi-contract, unjust enrichment requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party." *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012) (citation omitted). To recover under a theory of unjust enrichment, a plaintiff must generally show that she rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust. *Id.* (citations omitted).

As a preliminary matter, the Court notes that Ms. Costello can plead unjust enrichment in the alternative to breach of contract, and Defendants' argument that a claim for unjust enrichment can never be pursued by an at-will employee is incorrect. For reasons similar to those discussed regarding breach of contract claims above, a plaintiff's at-will employment status may limit the circumstances in which she can claim unjust enrichment but does not preclude the cause of action altogether. *See Sweet v. Indianapolis Jet Ctr., Inc.*, 918 F. Supp. 2d 801, 807 (S.D. Ind. 2013) (discussing Indiana law and concluding that plaintiff could only pursue a claim for unjust enrichment in the absence of a valid contract but suggesting that he could have asserted an unjust enrichment claim if he had alleged that his employer failed to pay him for wages owed before the employer informed him of a unilateral change to his salary). However, because Ms. Costello specifically alleges in connection with her unjust enrichment claim that

Witham "implemented a scheme to defraud her" and "intentionally lied" about its revenue, [Filing No. 36-1 at 7-8], her claim is based in fraud and is required to comply with Rule 9(b), s*ee Borsellino*, 477 F.3d at 507. She has failed to meet this standard.

Ms. Costello alleges that Witham knew that she was under a contract to receive a 5% bonus based on revenue, but "refused to inform" her of its actual revenue and "intentionally lied" to her. [Filing No. 36-1 at 8]. She alleges that Witham "completed this scheme by providing incorrect revenue figures" to her in order to avoid having to pay her a bonus. [Filing No. 36-1 at 8.] She also alleges that Witham allotted her three weeks of paid time off, but then required her to maintain her availability during her use of that time. [Filing No. 36-1 at 8.]

These allegations are not sufficiently specific. Witham is an entity, not a person capable of making statements or representations to Ms. Costello, and, therefore, she has not identified who lied to her. She has also failed to specifically allege when such lies occurred, what was said, or by what means it was communicated. *See Berkowitz*, 896 F.3d at 839.

Notably, the allegations that Ms. Costello relies upon in her Response concerning meal reimbursement are not specifically referenced in the Amended Complaint as a basis for her unjust enrichment claim, although they are incorporated by reference. [*See* Filing No. 36-1 at 2-4; Filing No. 36-1 at 7-8.] To the extent that these allegations were intended to relate to the scheme to defraud her, she has not given specific details about who denied her reimbursement requests, what that person communicated to her, when these communications were made, or how such conduct amounted to a fraudulent scheme. Accordingly, she has not stated a claim for unjust enrichment with sufficient particularity, and the Defendants' Motion is **GRANTED** to the extent that it seeks judgment as to that claim.

### D. Breach of Fiduciary Duty

Defendants argue that Ms. Costello's claim for breach of fiduciary duty fails because employers do not owe fiduciary duties to employees under Indiana law. [Filing No. 15 at 8-9.] They also argue that the claim was not pled with sufficient particularity as required by Rule 9(b). [Filing No. 15 at 9-10.]

Ms. Costello responds that Defendants owed her a fiduciary duty of disclosure. [Filing No. 20 at 11-12.] She asserts that her allegations state a claim for breach of that duty because Defendants knowingly and intentionally defaulted on the accounts that she had created, refused to inform her of Witham's actual revenue, and intentionally lied to her in an attempt to deprive her of her rightfully earned bonus. [Filing No. 20 at 12.]

In reply, Defendants assert that Ms. Costello failed to address their argument that she was required to plead her claim of breach of fiduciary duty with particularity because it was based in fraud. [Filing No. 24 at 7.] They also maintain that employers do not owe fiduciary duties to employees under Indiana law. [Filing No. 24 at 7-8.]

A claim for breach of fiduciary duty has three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 639 (Ind. Ct. App. 2015). Under Indiana law, employment "creates a species of agency relationship" pursuant to which employees owe fiduciary duties to the employer, while the employer owes "special duties" to the employee. *N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 187 (Ind. 2006). Among these "special" duties is the duty of disclosure, which generally requires that the principal "use care to inform the agent of risks of physical harm or pecuniary loss which, as the principal has reason to

know, exist in the performance of authorized acts and which he has reason to know are unknown to the agent." *Id.*

As a preliminary matter, the Court concludes that Ms. Costello's claim for breach of fiduciary duty is subject to the heightened pleading requirements of Rule 9(b). Because Ms. Costello argues that Defendants breached their duty to disclose facts that they had reason to know, a breach of that duty would require an intentional material omission or misrepresentation, *i.e.*, fraud. *See Borsellino*, 477 F.3d at 507.

Regardless, the allegations in the Complaint are deficient such that they fail to state a claim under both Rule 9(b) and Rule 12(b)(6). First, although an employer may owe a "special" duty of disclosure to an employee, the Indiana courts have stopped short of describing that duty as "fiduciary." *See Bloom*, 847 N.E.2d at 187. Second, and more importantly, Ms. Costello asserts this claim against "all Defendants," but she has not identified any specific misconduct connected to any particular Defendant, and instead merely alleges that all Defendants possessed a fiduciary duty to her and breached that duty. [Filing No. 36-1 at 9-10.] These allegations do not identify which Defendants owed her a duty, state with any specificity what actions breached those duties, or indicate how she was damaged as a result. Instead, Ms. Costello merely recites the elements of a claim for breach of fiduciary duty, which is insufficient even under the more lenient Rule 12(b)(6) standard. Accordingly, Defendants' Motion is **GRANTED** as to this claim.

### E.  Statute of Limitations

Defendants argue in the alternative that, if Ms. Costello's state law claims are allowed to proceed, they should be limited based on the statute of limitations. [Filing No. 15 at 11-12.] Specifically, Defendants argue that, to the extent that the claims concern representations made at

the time when Ms. Costello was hired, her claims for promissory estoppel, breach of fiduciary duty, and unjust enrichment should be dismissed as untimely based on the applicable two-year statute of limitations. [Filing No. 15 at 11-12.]

Ms. Costello responds that the statute of limitations argument would be better addressed, if at all, at the summary judgment stage or at trial because it is impossible for the Court to determine whether her claims are timely prior to discovery being conducted. [Filing No. 20 at 12-13.] She asserts that, after factual development, it may be the case that the statute of limitations has not expired or has been equitably tolled. [Filing No. 20 at 13.]

In reply, Defendants assert that, because Ms. Costello did not support her argument with legal authority, it is waived. [Filing No. 24 at 8-9.] They also argue that it is permissible to dismiss claims based on the statute of limitations before discovery is conducted, and, under Indiana law, equitable tolling is only applicable where fraud or fraudulent concealment has occurred, neither of which have happened in this case. [Filing No. 24 at 9.]

A plaintiff is not required to plead facts that overcome affirmative defenses based on the statute of limitations. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). Accordingly, dismissing a complaint as untimely based on the pleadings is disfavored, as a statute-of-limitations defense generally turns on facts not before the Court at this stage. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (citations omitted). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Id.*

Here, although it appears that some of Ms. Costello's claims involve representations or promises that were made to her during her employment negotiations, it is not clear from the face of the Complaint when the acts underlying the promissory estoppel claim occurred. Accordingly, it is not inconceivable at this stage that the statute of limitations has not fully run, or that it was somehow tolled. This, in combination with the fact that disposing of a claim on statute of limitations grounds at this stage in the proceeding is disfavored, leads the Court to conclude that Defendants' request to temporally limit the scope of the lawsuit is premature, and their 12(c) Motion is **DENIED** to the extent that it seeks to do so.

### F. Preemption

Defendants also argue that Ms. Costello's claims for breach of contract, unjust enrichment, promissory estoppel, and breach of fiduciary duty are preempted by the FLSA and the FMLA, to the extent that she seeks to recover damages for unpaid overtime or for being forced to work while on family or medical leave. [Filing No. 15 at 12.]

Ms. Costello responds that her claims are not preempted by the FLSA and that several District Courts in this Circuit have concluded that state law claims similar to hers can coexist with claims under the FLSA. [Filing No. 20 at 13-15.] She asserts that her state law claims seek damages in addition to those provided for by the FLSA and do not interfere with the purposes or Congressional intent of the FLSA and, therefore, are not preempted. [Filing No. 20 at 14-15.]

In reply, Defendants argue that Ms. Costello has waived her opposition to their argument that the FMLA preempts her state law claims by failing to address the argument in her response. [Filing No. 24 at 10.] They also assert that Ms. Costello mischaracterized the caselaw and maintain that they only seek partial judgment based on preemption to the extent that the state and federal claims seek the same relief. [Filing No. 24 at 10-11.]

The Seventh Circuit has not yet addressed whether the FLSA preempts state law claims like the ones asserted by Ms. Costello here. Other Circuits that have addressed the issue have concluded that the FLSA preempts state law claims only where the state law claims are merely alternative means for vindicating rights protected by the FLSA. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (concluding that "FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption," and noting that other courts have found "state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims"); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000) (noting that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA," but concluding that a common law fraud claim was not preempted); *Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. 1994) ("[T]he district court erred in holding that the FLSA pre-empts a state law contractual claim that seeks to recover wages for time that is compensable under the contract though not under the FLSA.").

District courts within this Circuit have reached similar conclusions. *See, e.g.*, *Scott v. NOW Courier, Inc.*, 2011 WL 13350293, at *4 (S.D. Ind. Sept. 27, 2011) ("[T]he FLSA preempts a plaintiff's state law claims where they are based on the same facts and circumstances. Thus, [Defendant] correctly asserts that Plaintiffs cannot utilize their unjust enrichment claim as a route to the same remedies available to them under the FLSA, i.e. unpaid wages."); *Nicholson v. UTi Worldwide, Inc.*, 2010 WL 551551, at *6 (S.D. Ill. Feb. 12, 2010) ("If a state common law claim is directly covered by the FLSA, the FLSA preempts that claim. . . . However, if the state common law claim seeks something other than what the FLSA can provide, such as, for example, regular wages not paid at the contracted rate, the claim is not preempted."); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1031 (E.D. Wis. 2008) ("If, as Plaintiffs

have alleged, [Defendant]'s policies are not only in violation of the FLSA, but also violate Wisconsin's wage and hours laws, and constitute a breach of contract, nothing in the language or purpose of the FLSA precludes Plaintiffs from proceeding on those claims in this action, as well.").

It is also true that the FMLA may preempt state law claims seeking to vindicate violations of rights created by the FMLA. *See Chastain v. Ind. Bell Tel. Co.*, 2010 WL 5349810, at *8 (S.D. Ind. Dec. 20, 2010) ("Because [Plaintiff] frames his state-law claim as a violation of FMLA rights, and because the FMLA provides the 'exclusive remedy' to a violation of such rights, [Plaintiff]'s claim is preempted by the FMLA, regardless of the merits of his federal claim.").

For the reasons stated above, only Ms. Costello's state law claims for breach of contract and promissory estoppel remain. Defendants' argument that these claims are preempted by the FLSA and FMLA is unavailing for two reasons. First, it does not appear that Ms. Costello is attempting to use state law causes of action to vindicate rights otherwise protected by these federal statutes. The allegations related to her breach of contract and promissory estoppel claims concern her bonus, reimbursement of expenses, refusal to accept clients, and default on credit accounts, while her allegations under the FLSA concern the payment of overtime wages and retaliation for seeking such payments, and her claims under the FMLA concern interference with her family and medical leave. Second, to the extent that there is overlap in the allegations concerning the state and federal claims, the Court does not have sufficient information at this stage in the proceeding to determine whether and to what extent the state law claims are preempted by the FLSA or the FMLA. Accordingly, to the extent the Defendants seek to limit Ms. Costello's claims based on preemption, their Motion is **DENIED**, although the issue of

preemption may be appropriately revisited at a later stage in the proceeding after further factual development has occurred.

## IV.
### CONCLUSION

Based on the foregoing, the Court makes the following rulings:

1. Ms. Costello's Motion for Leave to File an Amended Complaint, [36], is **GRANTED**.

2. The Clerk is **DIRECTED** to docket the proposed Amended Complaint, [36-1], separately as the operative complaint in this action, with the proposed exhibits, [36-2; 36-3], attached as exhibits thereto.

3. Defendants' Motion for Partial Judgment on the Pleadings, [14], as applied to the Amended Complaint, is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. the Motion is **GRANTED** as to Ms. Costello's claims for unjust enrichment and breach of fiduciary duty;

   b. the Motion is **DENIED** as to Ms. Costello's claims for breach of contract and promissory estoppel, which **shall proceed**;

   c. the Motion is **DENIED** to the extent that it seeks to limit the scope of Ms. Costello's claims based on the statute of limitations or preemption; and

   d. the Motion is **DENIED AS MOOT** as to Ms. Costello's constructive fraud claim, which has been withdrawn.

Date: 11/22/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana